PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ROBBINS COMPANY, | )<br>) CASE NO. 5:13cv2113 |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| HERRENKNECHT TUNNELLING<br>SYSTEMS USA, INC., | )<br>) |
| | ) **MEMORANDUM OF OPINION AND** |
| Defendant. | ) **ORDER** [Resolving ECF No. 51] |

Pending before the Court is a motion for attorneys fees filed by Defendant Herrenknecht Tunnelling Systems USA, Inc. ("HTS") against Plaintiff Robbins Company ("Robbins"). ECF No. 51. The Court has been advised, having reviewed the record, including the parties' briefs and the applicable law. For the reasons provided below, the Court denies HTS's Motion.

## I. Background and Procedural Facts

This motion for attorneys fees relates to a patent infringement claim initiated by Robbins. The patent in question, U.S. Patent No. 5,577,565 ("565 patent"), is for a device named the "Compact Roller Cutter." ECF No. 52-2 at 2. John C. Kocab and Dennis M. Ofiara finalized the design of the Compact Roller Cutter in October 1993 while the two were employed at Boretec—the company that would eventually become the Robbins Company. ECF No. 53-1 ¶ 8. According to Kocab, the object of the Compact Roller Cutter's design was to reduce the disc cutter's "footprint" on a tunnel boring machine's cutterhead. Traditional disc cutters are too

(5:13cv2113)

wide to mount on smaller cutterheads in sufficient numbers needed to maintain the necessary amount of thrust to bore through rock.  ECF No. 53-1 ¶ 5.  The Compact Roller Cutter's narrower footprint allows for a smaller diameter on a tunnel boring machine's cutterhead without sacrificing thrust because the disc cutters can be placed closer to one another.  ECF No. 53-1 ¶ 6.

In 1994, Boretec offered the Compact Roller Cutter for sale to three different companies.  Boretec offered to sell the Compact Roller Cutter to Kansas City Tunnelling on January 4, 1994 (ECF No. 52-8), to Barbco on February 2, 1994 (ECF No. 52-10), and to Bradshaw Construction on May 2, 1994 (ECF No. 52-11).  Boretec decided to obtain a patent for the Compact Roller Cutter in early 1995.  Ofiara and Kocab contacted Gene Dickerson for assistance in obtaining the patent because neither Ofiara nor Kocab had previously obtained a patent and Bortec—a small company—did not have its own patent attorney or regular outside counsel.  ECF No. 53-1 ¶ 10.  The intake form prepared by Dickerson indicates the file opened on February 24, 1995, but does not include a priority date for the Compact Roller Cutter.  ECF No. 53-4 at 12.

Dickerson filed the Compact Roller Cutter patent application on behalf of Ofiara and Kocab on June 29, 1995.  As part of the application, Ofiara and Kocab signed a declaration that stated that they would "disclose information of which we are aware which is material to the examination of [the] application."  ECF No. 52-24 at 2.  Ofiara did not know of the three offers for sale at the time he signed the declaration.  ECF No. 56 at 59.  Kocab knew.  He, however, did not attribute any legal significance to the sales.  Kocab had incorrectly believed that the application was timely because he and Ofiara had applied less than one year after the invention was first *sold*, when in fact the correct measure is less than one year after the invention was first

2

(5:13cv2113)

*offered for sale* (*see* 35 U.S.C. § 102(b)).  ECF No. 53-1 ¶ 11.  Dickerson did not ask Kocab and Ofiara when the Compact Roller Cutter had been offered for sale.  ECF Nos. 53-1 ¶ 12; 56 at 60–61.  The Patent Office issued the 565 Patent for the Compact Roller Cutter on November 26, 1996.  ECF No. 52-2 at 2.

Robbins[1] had sought to enforce its intellectual property rights in the 565 patent on two occasions prior to the circumstances that gave rise to the instant case.  In 2009, Robbins learned that two companies were manufacturing and selling a cutter assembly that infringed on the 565 patent.  Prior to filing a lawsuit, Robbins—represented by counsel different from the one whom had assisted with the application of the 565 patent[2]—asked a patent law firm to examine the allegedly infringing device.  ECF No. 53-4 ¶ 3.  After receiving an opinion that the device did infringe the 565 patent, Robbins initiated a lawsuit against American Augers, Inc. and Palmieri USA, Inc.  *Id.* ¶¶ 3–4; *see also Robbins Co. v. American Augers, Inc.*, 5:09-CV-00577(NDOH).  The parties settled the case through a consent decree without any party questioning the validity of the 565 patent.  *Id.* ¶¶ 4–5.  In 2011, Robbins learned that Barbco was selling a cutter assembly that might infringe the 565 patent.  Counsel for Robbins sent a letter to Barbco that asked whether Barbco was aware of the 565 patent.  *Id.* ¶ 6.  Barbco responded with a non-infringement opinion, and Robbins decided not to pursue a claim as a result.  *Id.*

Robbins later learned from a customer that American Augers and Palmieri had restarted manufacturing and selling an infringing cutter.  *Id.* 53-4 ¶ 7.  After reviewing the allegedly

---

[1] Boretec changed its name to the Robbins Company in 1998.  ECF No. 53-1 ¶ 3.

[2] Dickerson passed away at some point prior to this lawsuit.  ECF No. 57 at 13.

3

(5:13cv2113)

infringing device and concluding that it did infringe the 565 patent, Robbins filed a motion against American Augers and Palmieri to show cause why the companies should not be held in contempt for violating the consent decree. *Robbins Co. v. American Augers, Inc.*, 5:09-CV-00577 (ECF No. 25). American Augers denied that it had sold the infringing device. Instead, American Augers stated that it had received the device from HTS. ECF No. 53-4 ¶ 7. American Augers provided Robbins with the device and a copy of the invoice that showed receipt of the device from HTS. *Id.* Counsel for Robbins again had a patent law firm review the device. *Id.* Robbins initiated the instant lawsuit after patent counsel concluded that the HTS device infringed the 565 patent. ECF Nos. 53-3 ¶ 5 (affidavit of patent agent John Beinhardt); 53-5 ¶¶ 8–9 (affidavit of attorney Thomas G. Eschweiler).

     Less than six months after Robbins had filed its complaint, HTS provided Robbins with a document that HTS had obtained from Barbco. HTS believed that the Barbco document, which contained a drawing of the Compact Roller Cutter, demonstrated the invalidity of the 565 patent. ECF Nos. 51 at 17; 53 at 13. Three days later, Robbins informed HTS that Robbins intended to prepare a dismissal entry for its patent infringement claim, and asked HTS to dismiss its counterclaims for declaratory judgment and attorneys fees. ECF No. 52-18 at 2. When HTS declined to do so, Robbins filed a motion to dismiss for lack of subject-matter jurisdiction (ECF No. 28) and a motion to stay discovery (ECF No. 30). Discovery was stayed pending resolution of the motion to dismiss. ECF No. 35. The Court granted Robbins's motion to dismiss in part. ECF No. 41. Although the Court held that it lacked subject-matter jurisdiction over HTS's claim for declaratory judgment for want of an actual controversy, the Court concluded that HTS's claim

(5:13cv2113)

for attorneys fees provided an independent source of jurisdiction. *Id.* at 4–5. Discovery remained stayed.

On September 24, 2014, the Court lifted the stay on discovery. ECF No. 50. The Court's Order provided that the parties were limited to sixty (60) days of discovery, and that any motion for attorneys fees must be filed within ninety days. *Id.* at 1. HTS timely filed its motion for attorneys fees under either 35 U.S.C. § 285 or under 28 U.S.C. § 1927. ECF No. 51. Robbins opposed (ECF No. 53); HTS replied. ECF No. 57. The matter is ripe for adjudication.

## II. Standard for Awarding Attorneys Fees

Awards for attorneys fees under 35 U.S.C. § 285 are governed by Federal Circuit law. *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 (Fed. Cir. 2001). In contrast, sanctions under 28 U.S.C. § 1927 are governed by the law of the regional circuit--in this case, the Sixth Circuit. *Nystrom v. TREX Co.*, 424 F.3d 1136, 1141 (Fed. Cir. 2005) (holding that the law of the regional circuit governs motions for sanctions under 28 U.S.C. § 1927).

A district court may award attorneys fees to the prevailing party under 35 U.S.C. § 285 in exceptional cases. Analysis under § 285 is a two-step process. First, the prevailing party must establish that the case is exceptional. *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003). The Supreme Court has recently expounded what constitutes an exceptional case in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). Within the context of § 285, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane*

(5:13cv2113)

*Fitness, LLC*, 134 S. Ct. at 1756. In evaluating whether a case is exceptional under the totality of the circumstances, the district court should consider, among other factors, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

If the case is deemed exceptional, the court must determine whether an award of fees is appropriate, and if so, the amount to be awarded. *Forest Labs., Inc.*, 339 F.3d at 1328. The Federal Circuit has long held that "an exceptional case does not require in all circumstances the award of attorney fees." *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986). Although *Octane Fitness* modified the analysis for determining whether a case is exceptional, it "did not, however, revoke the discretion of a district court to deny fee awards even in exceptional cases." *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002, 1005 (Fed. Cir. 2014).

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." In the Sixth Circuit:

> [a] court may sanction an attorney under § 1927 for unreasonably and vexatiously multiplying the proceedings even in the absence of any conscious impropriety. The proper inquiry is not whether an attorney acted in bad faith; rather, a court should consider whether an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims. An award of fees under the statute thus requires a showing of something less than subjective bad faith, but something more than negligence or incompetence.

6

(5:13cv2113)

*Hall v. Liberty Life Assur. Co. Of Boston*, 595 F.3d 270, 275–76 (6th Cir. 2010) (citations and quotation marks omitted).  Section 1927 "does not authorize the imposition of sanctions on a represented party, nor does it authorize the imposition of sanctions on a law firm."  *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 750 (6th Cir. 2010) (quoting *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396 n.6 (6th Cir. 2009) (internal quotation marks omitted)).

### III.  Discussion

**A. Attorneys Fees Under 35 U.S.C. § 285**

HTS advances what it believes are four "independently sufficient reasons" for concluding that the conduct of Robbins renders this an exceptional case warranting attorneys fees: (1) Robbins engaged in inequitable conduct when it failed to disclose three invalidating offers for sale at the time of prosecution of the 565 patent to the PTO, (2) a prior document, referred to as the Air Force Document, plainly anticipated the 565 patent, (3) Robbins's infringement theory and claim construction were objectively unreasonable, and (4) Robbins failed to comply with the local patent rules.  For the reasons that follow, none of these bases warrants an award for attorneys fees.

**1. Inequitable Conduct**

HTS argues that Robbins engaged in inequitable conduct when it failed to disclose three invalidating offers during the prosecution of the 565 patent.  HTS states that Robbins offered to sell a commercial embodiment of the 565 patent more than a year before the effective date of the patent.  *See* 35 U.S.C. § 102(b) (permitting the patenting of devices that were disclosed less than a year before the patent's effective date).

7

(5:13cv2113)

To demonstrate inequitable conduct, HTS needs to prove by clear and convincing evidence that Robbins acted with a specific intent to deceive the PTO when it prosecuted the 565 patent. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Id.* (quoting *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995)) (emphasis omitted). Inequitable conduct will only be found when the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it. *Id.*

Gross negligence or negligence under a "should have known" standard does not satisfy the intent requirement. *Therasense, Inc.*, 649 F.3d at 1290 (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988)). The failure to disclose material information to the PTO, on its own, does not prove specific intent to deceive. *Id.* (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). To meet the clear and convincing evidence standard, the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Id.* (citing *Star Scientific*, 537 F.3d at 1366). "[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* (citing *Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*, 528 F.3d 1365, 1376 (Fed. Cir. 2008)).

HTS has not established a specific intent to deceive. HTS argues that Robbins engaged in inequitable conduct by failing to disclose invalidating offers, but HTS does not present evidence to prove that Robbins *intended* to deceive the PTO when it failed to do so. The only evidence

8

(5:13cv2113)

touching upon intent is the deposition testimony of Kocab.  When asked whether he was aware that there had been an offer for sale more than a year in advance of the patent being filed with the PTO, Kocab testified that he "was likely aware of it," but that he did not attach significance to that fact.  ECF No. 54 at 50.  Kocab learned of the significance of the offers for sale when his current counsel explained it to him during this litigation—almost twenty years after the patent's prosecution.  ECF No. 54 at 50.  At best, this evidence demonstrates Kocab's ignorance, not that he knew that the invalidating offers precluded Robbins from obtaining a patent.  It does not satisfy the clear and convincing evidence standard necessary to demonstrate an intent to deceive. *Therasense, Inc.*, 649 F.3d at 1296 (vacating a district court decision when the finding of intent rested on the conclusion that the plaintiff should have known of the materiality of the withheld information).

HTS argues that inequitable conduct should be found because "knowledge of the law is chargeable to the inventor." *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1385 (Fed. Cir. 2001).  HTS's reliance on *Brasseler* does not help its case, however, because the quoted passage relates to the materiality inquiry, not the specific intent to deceive.  As the Federal Circuit observed post-*Brasseler*: "Intent and materiality are separate requirements.  A district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa." *Therasense*, 649 F.3d at 1290 (citations omitted).  HTS must therefore present clear and convincing evidence of intent to deceive without relying on a strong showing of materiality to shoulder the burden.  As mentioned above, the best evidence of intent suggests, at most, that Kocab "should have known."  This is

9

(5:13cv2113)

legally insufficient to establish an intent to deceive. Without a showing of intent to deceive, HTS cannot demonstrate inequitable conduct to justify an award of attorneys fees.

### 2. The Air Force Document

HTS argues that Robbins submitted a proposal to the United States Air Force in 1988 ("Air Force Document") that anticipates the 565 patent. ECF No. 52-6. Specifically, HTS argues that the cutter proposed in the Air Force Document, like the 565 patent, includes an eliminated outer raceway. ECF No. 52-6 at 14 (Figure 1-3). HTS argues that this reads onto Claim 1 of the 565 patent, rendering the patent invalid. HTS argues that, because HTS provided Robbins with the Air Force Document on December 11, 2013, Robbins engaged in vexatious conduct when it continued to prosecute this case.

"A single prior art reference anticipates a patent claim if it expressly or inherently describes each and every limitation set forth in the patent claim." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002). In this case, the Air Force Document fails to describe a number of the limitations contained in Claim 1. Claim 1 of the 565 patent urges the following:

> A roller cutter assembly comprising a saddle defining a recess having mounting surfaces thereon, first and second support plates each having positioning faces engageable with said mounting surfaces to position said support plates on said saddle, each of said support plates having an inner and an outer side, a shaft having an enlarged head at one end and a threaded portion at the other end, each of said support plates defining a bore adapted to receive said shaft, said shaft extending between said support plates and positioning said support plates a predetermined spaced distance apart with said plate sides parallel, said first plate having a recess on its outer side around said bore to receive said enlarged shaft head, a nut adapted to engage the threaded portion of said shaft, said second plate having a recess on its outer side to receive said nut on said shaft, a pair of tapered roller bearings having cone members on said shaft with the cone surfaces facing

(5:13cv2113)

> each other, a set of tapered rollers on each of said cone members, and a unitary annular cutter wheel having an outer cutting edge and an inner race surface journalled directly on said tapered rollers.

ECF No. 52-2 at 7 (internal citations omitted). The Air Force Document does not refer to the following limitations: "a shaft having an enlarged head at one end and a threaded portion at the other end," "a bore adapted to receive said shaft," and "said first plate having a recess on its outer side around said bore to receive said enlarged shaft head, a nut adapted to engage the threaded portion of said shaft, said second plate having a recess on its outer side to receive said nut on said shaft." ECF No. 53-3 ¶ 12. Attorney Niehaus reviewed the Air Force Document when counsel for HTS presented it to him, determined it was of little relevance to the case, and received confirmation of the same from outside counsel and a patent agent. ECF No. 53-4 ¶ 11. HTS has not revealed vexatious conduct warranting an award of attorneys fees.

### 3. Merits of Robbins's Claim Construction and Infringement Claim

HTS argues the case is exceptional because Robbins's unreasonable claim construction rendered the case baseless from its inception. HTS argues that Robbins's proposed construction of the term "unitary" is both objectively and subjectively unreasonable, and Robbins's pursuit of its claim predicated on this interpretation is vexatious.

A claim is objectively baseless when "no reasonable litigant could reasonably expect success on the merits." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013). An infringement claim is not objectively baseless merely because the plaintiff is unsuccessful on the merits of the infringement claim. *See iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1380 (Fed. Cir. 2011). Rather, only "exceptionally meritless claims" may support an

11

(5:13cv2113)

award for attorneys fees under 35 U.S.C. § 285. *Octane Fitness, LLC*, 134 S. Ct. at 1757.

Robbins's claim was not objectively baseless.  It is a well-accepted canon of claim construction that a court may consult a dictionary to construe claims so long as the dictionary does not contradict definitions in the intrinsic evidence. *Aristocrat Technologies Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1358 (Fed. Cir. 2013) (affirming the district court's use of a dictionary definition to arrive at the "ordinary and customary" meaning of the disputed term); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1322 (Fed. Cir. 2005) (*en banc*) (observing that the Supreme Court and the Federal Circuit have both used dictionaries to demonstrate the "commonly understood meaning of words" because dictionaries are unbiased and "accessible to the public in advance of litigation"); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996) (stating that dictionaries are "worthy of special note" as extrinsic evidence and may be freely consulted "when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents").

In light of this, Robbins's reliance on the dictionary definition for unitary, "an entity comprising one or more parts," is reasonable because it is consistent with, rather than contradictory to, the intrinsic evidence. ECF No. 52-20 at 2.  Claim 1 of the 565 patent describes the unitary annular cutter wheel as "having an outer cutting edge and an inner race surface journaled directly on said tapered rollers." ECF No. 52-2 at 7.  The language that HTS quoted from the 565 patent's abstract, "[t]he shaft mounts a pair of inner races for tapered roller bearings which run directly on the roller cutter inner surface which forms the outer race for the bearing assembly," contemplates "one or more parts."  *See* ECF No. 51 at 7 (explaining that cutters had

12

(5:13cv2113)

generally been designed to have the cutters rotate "on a shaft with the aid of tapered roller bearings . . ."). Perhaps most persuasive is the description of the cutter wheel's assembly:

> Assembly of the cutter wheel is easily accomplished by placing an O-ring in the groove and inserting the shaft through the bore until the head is firmly seated in the counterbore. After that is done, the cone is pressed onto the shaft until it abuts against the first support plate inner face, after which the adjacent roller assembly is mounted in place together with the adjacent O-ring seal and seal member. The cutter disc can then be mounted on the rollers, followed by the other set of rollers, and the other cone. The other O-ring seal and inner seal member are then assembled in place and the second support plate placed over the end of the shaft. The nut is then threaded in place with the diaphragm, and using the spanner recesses, the nut is rotated with respect to the shaft until the desired preload on the bearings is obtained. To lock the nut in place, it is then staked to the outer plate in the conventional manner, and the chamber can be filled with lubricating oil, after which the filler passage is closed by the plug, and the assembly is complete.

ECF No. 52-2 at 7.  The description of the assembly details multiple parts, including two O-rings, the shaft, two cones, two support plates, the cutter disc, the roller assemblies, and a nut to hold all the parts in place.  The intrinsic evidence supports Robbins's preliminary construction of unitary as "an entity comprising one or more parts."  Its claim construction, therefore, was not objectively baseless.

Robbins also advanced a theory of infringement that was not objectively baseless. Robbins filed a lawsuit against HTS after it had investigated whether the HTS device infringed the 565 patent.  ECF No. 53-4 ¶ 7.  As part of that investigation, Robbins obtained the device and documentation from American Augers supporting its theory that the device had created by HTS. Id.  Robbins then had a patent agent and patent attorney evaluate whether the device infringed the 565 patent.  Both concluded that it did.  ECF Nos. 53-3 ¶ 5 (affidavit of patent agent John Beinhardt); 53-5 ¶¶ 8–9 (affidavit of attorney Thomas G. Eschweiler).  Although Robbins later

13

(5:13cv2113)

dismissed its claim against HTS, it did so because HTS subsequently produced evidence of a prior invalidating sale that renders the patent invalid. The 565 patent's validity had not been challenged in Robbins's previous efforts to enforce its property rights. Until presented with evidence to the contrary, Robbins was entitled to the presumption of the patent's validity. *See* 35 § U.S.C. 282(a) ("A patent shall be presumed valid."); *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2245 (2011) ("[B]y its express terms, § 282 establishes a presumption of patent validity, and it provides that a challenger must overcome that presumption to prevail on an invalidity defense."); *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) (holding that the presumption of validity needs to be overcome by clear and convincing evidence). And, upon presentation of the contrary evidence, Robbins quickly informed HTS that it intended to dismiss its infringement claim. While Robbins's conduct may render the case unfortunate; it does not render it exceptional.

### 4. Compliance with the Local Patent Rules

Finally, HTS argues that Robbins failed to comply with Local Patent Rule 3.2(a), which provides that a party claiming patent infringement must produce with its Infringement Contentions "[a]ll documents concerning any disclosure, sale or transfer, or offer to sell or transfer of the claimed invention prior to the bar date under 35 U.S.C. § 102(b) and/or the date of invention for the patent in suit." This production must occur within the same 15-day period following a responsive pleading within which to serve Infringement Contentions. L.P.R. 3.1. HTS argues that Robbins has violated the Local Patent Rules because HTS filed its answer and counterclaim on December 20, 2013 (ECF No. 11), but Robbins did not provide the prior offers

14

(5:13cv2113)

for sale by January 5, 2014—and in fact did not produce one document until November 5, 2014.

HTS overstates its point that the failure to comply with the Local Patent Rules renders this case exceptional, because any deviations were agreed upon by the parties.  Counsel conducted a telephonic conference to prepare their 26(f) report on December 12, 2013.  During that conversation, the parties agreed to delay the Local Patent Rules disclosures until after the Court had ruled on a dispositive motion that counsel for HTS had intended to file.  ECF No. 53-4 ¶ 12.  Counsel for Robbins provided counsel for HTS with a draft Rule 26(f) report, but counsel for HTS did not respond until January 3, 2014.  ECF No. 53-4 ¶ 17.  The parties then agreed to "a departure from the dates set forth in the Local Patent Rules" and tied the requested disclosures to the date of the January 6, 2014 Case Management Conference.  ECF No. 16 at 1–2 (Report of Parties' Planning Meeting).  Under the timeline agreed to by HTS, the production was due by January 21, not January 5, 2014.

On January 21, 2014, Robbins provided all documents that it had located and determined were responsive to the Local Patent Rules.  ECF No. 53-4 ¶ 20.  Robbins continued to look for files, as its initial search revealed that Robbins had not retained files from the 1994-1995 time frame.  ECF No. 53-1 ¶¶ 13–14.  Email correspondence between counsel for Robbins and HTS reveals that Robbins informed HTS that Robbins was still engaged in an ongoing search of its records.  ECF No. 52-17 at 2.  While this search was ongoing, counsel for HTS provided counsel for Robbins with another invalidating offer on March 3, 2014.  Robbins informed HTS that it was no longer pursuing its patent infringement claim three days later.  ECF No. 53-4 ¶ 24.  Therefore, as of March 6, 2014, Robbins was no longer "a party claiming patent infringement."

15

(5:13cv2113)

*See* Local Patent Rules 3.1 and 3.2(a).

HTS complains that it received a document on November 5, 2014 that it should have received January 5, 2014.  HTS has manufactured the significance attached to the November 5th production.  The delayed production is explainable for reasons other than vexatious litigation conduct.  Shortly after informing HTS that it intended to voluntarily dismiss its patent infringement claim, Robbins filed a motion to dismiss for lack of subject matter jurisdiction (ECF No. 28) and a motion to stay discovery (ECF No. 30).  While HTS may believe this conduct is "brazen," the Court found both motions to be meritorious at least in part.  The Court granted Robbins's motion to stay (ECF No. 35) and granted, in part, Robbins's motion to dismiss (ECF No. 41).  As a consequence of those orders, discovery was stayed from April 18, 2014 until September 24, 2014.  ECF No. 50.  HTS reissued its requests for documentation from Robbins on October 6, 2014, and Robbins responded by November 5, 2014.  ECF No. 53 at 14.  The case is not exceptional on these facts.

HTS also indicates that Robbins failed to search for the offers of sale in its 2009 suit against American Augers and Palmieri.  This argument ignores the tenet that issued patents are presumed to be valid until a party rebuts the presumption by proving invalidity by clear and convincing evidence.  35 U.S.C. § 282(a); *Microsoft Corp.*, 131 S. Ct. at 2245; *Sciele Pharma Inc.*, 684 F.3d at 1260.  American Augers and Palmieri did not seek discovery relating to the validity of the 565 patent in that case, and the Local Patent Rules—which did not become effective until October 22, 2009—did not apply in that case which was terminated on August 31, 2009.  L.P.R. 1.6; *see also* ECF No. 53-4 ¶ 4.  Robbins did not have an obligation to search for

16

(5:13cv2113)

those records in that case, and that no search occurred does not render this case exceptional.

### 5. Summary

The Court concludes that HTS's proffered "independently sufficient" reasons for finding this case exceptional under 35 U.S.C. § 285 are without merit. HTS has failed to provide clear and convincing evidence that proves that Robbins had the specific intent to deceive the PTO. The Air Force Document does not anticipate the 565 patent because it lacks a number of limitations contained in the patent. Robbins advanced a reasonable claim construction for the term "unitary," and its patent infringement claim—dismissed for reasons unrelated to the contested claim construction—was not objectively baseless. Robbins did not fail to comply with the Local Patent Rules, and any delay in production was due to agreement by the parties, awaiting the resolution of meritorious motions, and a Court-ordered stay in discovery. The Court therefore rejects HTS's claim for attorneys fees under 35 U.S.C. § 285.

### B. Attorneys Fees Under 28 U.S.C. § 1927

HTS advances the same grounds for awarding attorneys fees under 28 U.S.C. § 1927 as it does under 35 U.S.C. § 285. ECF No. 51 at 17 (arguing that the Court should find the case "exceptional under § 295 and/or § 1927"). For the reasons stated above, the Court also rejects HTS's request for attorneys fees under 28 U.S.C. § 1927.

As an additional ground for rejecting HTS's motion, the Court holds that Robbins is not properly sanctionable under § 1927. HTS does not allege that any of Robbins's attorneys have acted in a way that justifies sanctions. Instead, HTS's motion seeks fees based on conduct of Robbins. ECF No. 51 at 6 (listing four reasons for finding that Robbins's conduct renders this

(5:13cv2113)

case exceptional).  As HTS does not direct its claim at the conduct of a particular attorney, its claim for sanctions pursuant to 28 U.S.C. § 1927 cannot be maintained.  *See Rentz*, 556 F.3d at 395–96 (holding that the imposition of sanctions under § 1927 is only authorized on an "attorney or other person admitted to conduct cases"); *JP Morgan Chase Bank, NA v. Winget*, 2014 WL 86815, at *1 (E.D. Mich. Jan. 9, 2014) (ruling on a motion for sanctions under § 1927 directed against the alleged wrong conduct of a specific attorney rather than a law firm or a party).

### IV.  Conclusion

For the forgoing reasons, the Court denies HTS's motion for attorneys fees.


IT IS SO ORDERED.


| May 29, 2015 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |